Good morning. The Ninth Circuit welcomes you all here today. Judge Graber, who sits in Portland, Oregon, and Judge D'Alba from Fresno, California, and I are very pleased to be here, sitting in my home state in this beautiful ceremonial courtroom. We have three cases that will be submitted today, and I'll briefly go through those now. Lemus de Leon v. Garland is submitted, Sepulveda Sotelo v. Garland is submitted, and United States v. Nelson is submitted. We're going to hear three cases this morning, and we'll take them up in the order they appear on the calendar. We'll start with Hines v. Dzurenda, and each side will have ten minutes, and I understand Ms. Walker and Mr. McKusick, you are splitting time, so we're going to just set the clock for seven minutes and three minutes, but I'll ask that you keep your own time. You may begin when you're ready. Good morning, Your Honors, and may it please the Court. My name is Sally Walker, and I'm a 3L at the University of Washington School of Law. Together with my colleague, Walker McKusick, I represent Plaintiff Appellant Mr. Tony Hines. During his disciplinary hearing, Mr. Hines protested, how can I defend myself if I don't know what I'm being charged with doing? That is the crux of this case. Here Mr. Hines was accused of introducing intoxicants into the prison. So he knew what he was charged with, he just didn't know all the evidence in support of the charge, correct? Your Honor, he knew the name of the charge. The name of the charge here is quite broad. In the Nevada prison system, intoxicants can include drugs, alcohol, or even materials used to manufacture those items, and introduction also can refer to a wide range of behaviors. He didn't have access to any of the alleged evidence against him, but he also didn't have access to any of the factual detail about the charge so that he could know what conduct specifically was at issue. And the reason that was stated for not providing that information was confidentiality, correct? Your Honor, yes, Mr. Spieth cited confidentiality for keeping evidence, some evidence from Mr. Hines. However, the reasons cited are very broad. It was worry about copycat attempts. This Our court has recognized that confidentiality is an appropriate basis to withhold evidence in these kinds of proceedings, correct? Yes, Your Honor. And Wolf envisions that confidentiality concerns can justify keeping some evidence or certain pieces of evidence from inmates. But here, once again, Mr. Spieth not only kept all evidence, not certain pieces, all evidence, but also any factual detail about the conduct at issue. And the standard set out in Wolf for notice is written notice of charges that allows an inmate to marshal the facts and present a defense. And here with no facts, and in fact, the only information that was provided, factual information, was misinformation, was an incorrect date. With no facts, he could not marshal facts, and he couldn't present a defense beyond a blanket denial of involvement as to conduct that he didn't understand. So, counsel, what about the idea that when they were doing the investigation or when they were talking to Mr. Hines, he, on his own, said, I didn't get, like, court staff or, I'm sorry, jail staff involved? Yes, Your Honor. That happened during the disciplinary hearing. In that piece of the disciplinary hearing, he denied a broad range of things because he didn't know what specifically to deny. Was he specifically told that there was staff involvement? No, Your Honor. However, he denied, he said, I've never been involved with drugs. I've never had a positive drug test. I've never worked with staff. Mr. Hines has been in the prison for 44 years, and he was just guessing as to what possibly he could have been charged with here, especially on a summary judgment posture where we're taking the facts in the light most favorable to Mr. Hines. This was a guess. I'm sorry. Wouldn't he be entitled, wouldn't the defendant be entitled to qualified immunity in any event? No, Your Honor. Wolf clearly establishes the standard for notice here, and then also as to our second claim, which is a decision based on some evidence, Superintendent Vigil and Zimmerle clearly established the standard there. Well, there was evidence. The problem is a different one, that he didn't receive the evidence, but there was evidence. Your Honor, the some evidence standard requires that a district court look at the record that the disciplinary committee – look at the record of evidence that the disciplinary committee saw and find that some evidence supported the decision. Here, all evidence was kept confidential. The district court has not seen any evidence, neither has this Court or Mr. Hines. There was no evidence on this record from which the district court could have affirmed the decision below or by the disciplinary committee. Let me ask you about a case that you do not address in your brief, which is Ashker v. Newsom. Are you familiar with that case? Yes, Your Honor. Okay.  So, in that case, the inmate actually received both a notice of charge and a notice of disclosure, which is something similar to the notice that was provided here to be sufficient to satisfy due process. Can you distinguish Ashker from this case? Yes, Your Honor. The issue in Ashker went to confidential informant disclosure forms. It specifically was asking whether misleading information in those confidential informant forms was cut against notice. So, in that case, the inmate actually received both a notice of charges form and these confidential informant disclosure forms. So, it's a different question than what is presented here, where Mr. Hines received certainly no information and certainly not any information about what the alleged confidential informant said. Once again, I'll say that there are two violations in this case. The first goes to the notice, which was insufficient under the clearly established standards set out in Wolf. In every case that we cite and that opposing counsel cites, inmates received more information than what Mr. Hines received here. No reasonable official could argue that the notice of charges provided here allowed Mr. Hines to marshal the facts and present a defense, which is the standard set out in Wolf. Additionally, because all evidence was kept confidential, there was not some evidence that the district court could look to to affirm the decision below by the disciplinary committee. As to the latter, would there be an opportunity to review everything in camera? Would that satisfy your concern as to the second issue? Yes. If the district court had reviewed everything in camera, that would have satisfied the issue, had they found that some evidence supported the decision below. I welcome Your Honor's questions. I only have 13 seconds left, but I'll cede my time to my colleagues. Thank you. I don't think we have any questions at this time. Thank you so much. Mr. Davis? Are we at the top, I guess? I'm pushing one, I guess. I think we're at the top. I think that's what that means, right? It's good to see Judge Kramer again. I don't know if you remember me, but I was Judge Wellenson's first law clerk. It was only a few years ago. Yeah, that keeps happening to me. People that were, you know, this tall are now practicing and so forth. I want to thank the members of the panel for permitting me to present my oral arguments. The district court properly granted Lieutenant Speece's motion for summary judgment because inmate Tony Hines was lawfully found guilty of distributing drugs. Excuse me, Mr. Davis. One second. Deanna, I think we need to get the clock to start running. Thank you. Sorry, we could give you an endless ten minutes, but that might not be very good. That would be great. I was just saying that counsel on the other side, they only get like a minute for every 200 miles they travel. So that's pretty bad. All right. Sorry for the interruption. Sure. This court must review Hines' appeal through two lenses in order to properly focus Hines' arguments. First, this court must review the appeal through qualified immunity, which requires Hines to establish not only a constitutional violation, but also that the right was clearly established. Not as a broad general proposition as counsel has alluded to, as Hines has argued, but in a particularized sense, that the right is clear to a reasonable prison official. Hines does not cite any authority that Lieutenant Speece violated a constitutional right, but merely attempts to distinguish the authorities which Hines confirms that Lieutenant Speece acted properly. For example, counsel has said that this is standard by Wolf. The standard that was required here is standard by Wolf. But in Asgard, this court said that that wasn't clearly established. Let me ask you this question, because I'm a little bothered at the lack of any real information. And I understand that we have a case on this circuit that, you know, really does favor the position that you're taking in this court. But so assuming the notice presented in the case is sufficient to satisfy due process, what kind of notice, beyond providing no notice at all, would violate due process? Well, I mean, you have to have – it is, of course, barred minimal notice. And also I want to focus it through this lens, too, also, that the type of process that was required, the amount of process due depends on the interest involved. Okay? And that's in the Asgard case. For example, in this case, the interest involved was disciplinary segregation, 60 days disciplinary segregation. That's what he got. And that's not even a liberty interest. The – Mr. Hines, just this last year was told that disciplinary segregation at NDOC doesn't involve the liberty interest. And that's 223 Westlaw 2570-395. And so it's a flexible standard, depending on the interest involved. Here, because we have little or no liberty interest, there's literally – it would  You say it's a flexible standard, but I can't really see how, beyond providing no notice, anybody can meet the standard that this would violate due process. Well, I would agree that if you don't – you can't say – you can't tell them the wrong – I think that, for example, if they would have said, okay, you're coming up here for distributing drugs, MJ-53, right? And they get to the disciplinary hearing and they tell him, well, guess what? We're convicting you of writing. Well, that, of course, wouldn't be proper notice, Your Honor. Proper notice would be – and I could go through, you know, we could imagine all kinds of things that wouldn't be proper notice. But what we can't imagine, Your Honor, is that in this case, the notice was fully proper. I could kind of go through what the notice provided. It says, the notice not only pines – told Hines the defense code, MJ-53, possession and sale of intoxicant, but also informed the inmate of the nature of the offense, introduction of a controlled substance – not just any intoxicant, but of a controlled substance – to SDCC, where the prison was, when the offense occurred, 9-20-2017. I know counsel have made an issue saying, hey, that's the wrong date. But that is a date within the timeframe of when these events happened. And in the Walker case and in the Zimmerle case, you don't have to have an exact – With respect to the date, does it matter that his defense was a blanket denial? In other words, he didn't focus on the date in his testimony at the hearing. He just said, listen, you can bring stuff in with visitors. You can bring stuff in through staff. I have never done that ever. So I'm not really sure how the precision of the date really makes any difference. That's what I'm saying, Your Honor. It doesn't, because this wasn't something that happened on a single date. This was a thing that happened over a course of proceedings of the years. And that leads me to the second point. I talked about the first lens you have to do with qualified immunity. The second lens you have to view this through is the – is the holdings of Wolfe and Hill. In Wolfe, the Court says prison disciplinary proceedings are not part of the criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply. And that's what they're trying to do here. That's what they like. But that's not what we have here. We're not involved with that. In Hill, it says, when identifying the safeguards required by due process, the Court should recognize the legitimate institutional needs of assuring the safety of the inmates and avoiding the burdensome administrative requirements and preserving disciplinary process as a means of restitution. Here, these goals are utmost important here because drug, as we all know, drug smuggling in prisons is one of the primary safety concerns that the prison administrator deals with. So these concerns are heavy. Additionally, like I said, here we have – we only have a minimal, if any, liberty interest involved. It's disciplinary segregation. And this Court has repeatedly held that disciplinary segregation does not involve the liberty interest at MDOC. I'd like to ask you about one other aspect of this, and that is the – whether the district court was obliged to review the supporting evidence in camera. No, Your Honor. It was not. Okay? Because? Because. Okay. For example, in the – in the Wolf case, Justice Brennan and Justice Marshall in their concurring opinion expressly recognized that prison disciplinary boards could establish a liability of confidential informants in camera. And that's at 418 U.S. 590. Circuit courts have also similarly recognized. Well, that's – that's exactly what I'm asking, though. Why wouldn't the district court have to have looked at the information itself to determine whether there was some evidence to support the result? Because that function can be done by the disciplinary board and not the court. With no review by the court? Right. Right. Right, Your Honor. A lot of these things don't have any review by the court. I mean, we're talking about – we're talking about confidential information. And, you know, it's not that the court couldn't do the review. I mean – Well, it's not confidential from the court. If Mr. Hines had asked the court to conduct an in-camera review, I mean, we might have a different issue here. But he didn't request that an in-camera review be done by the district court. So, counsel – And so the thing is – Counsel – I don't say it's improper for the district court to do an in-camera review. Is it your position, then, that we just have to take their word for it and the district court doesn't on its own have a right to review things in camera? No. I did not say that, Your Honor. I said that it wouldn't be improper for the district court to review it in camera, but there was no request ever made here in this case. You're saying they waived or forfeited that issue by not having raised it before the district court. Right. And the thing is, in this case also, in-camera review also would have been unnecessary because the information was self-cooperating, which is another way. In-camera review isn't the only way. They talk about a flexible standard of doing this. For example, the telephone calls mentioned that Hines was involved in purchasing and storing narcotics. The confidential informant confirmed that she brought drugs into the institution on behalf of Hines. As a result, Investigator Scully located and seized the drugs. In other words, because of the confidential informant, they were able to locate, which establishes the reliability. Without prompting, again, like Your Honors have said, without prompting, he volunteered. He never compromised staff, which is, you know, surprising considering, hey, he didn't know what it was, so how did he – why would he raise that as an issue? The confidential informant confirmed that staff members was involved – and the confidential informant confirmed that staff members was involved. As in Doro, the confidential informant is considered reliable because part of the information provided by the confidential source has already been proven to be true. As explained in Zimmerle, proof that an informant supplied reliable information is sufficient to establish reliability. Again, I want to go through something, though, that we haven't talked about. I've got, like, a minute to do this. At screening, which Hines does not challenge, the district court limited Hines' due process claims to two things, that Speece did not provide Hines with an added description of the evidence against him, and that Speece did not verify the reliability of confidential information. These are the only two issues before this Court. The issue of notice is not before this Court because the district court and summary judgment order challenged by Hines didn't address those issues because it wasn't before the Court. It didn't survive screening. And Mr. Hines has not challenged the screening order, and so that we're – that's what we're here on. Your Honor, so the entire case that they're presenting to you isn't even properly before this Court. But even if it was, Lieutenant Speece is entitled to qualified immunity because as an asker, the Court recognized the specificity of notice required under Wolf has not yet been established. So if it hasn't been yet established, it's not clearly established. While in Melnick, the Court recognized that requested evidence could be with – could not be withheld when prison authorities admitted that they had no legitimate logical reason for withholding the information, this Court still affirmed that information may be withheld if not requested, which Mr. – which Mr. Hines never did. He never requested the information. Or if it is confidential, which is the case in this case. Okay. Thank you, Mr. Davis. Thank you. Your time has expired. We appreciate your argument. And now we'll hear rebuttal from Mr. McKissack. Good morning, Your Honors. My name is Walker McKissack, and I represent Mr. Hines. I'd like to, with the little time I have remaining, address two things that opposing counsel brought up in their argument this morning. The first that they said was that there are no cases that provide the contours of the rights that were violated of Mr. Hines that involved due process rights in prisons. Those cases are Wolf as well as Hill, as we've already discussed today. Wolf lays out a clear standard that there must be a written notice to the prisoner that provides them an ability to marshal the facts. Here, there were no facts to marshal. Cases beyond that at the Supreme Court, including Wilkinson v. Austin at 225 to 226, bring up and discuss multiple times how basic facts must be a part of that notice to allow an inmate the basic ability to be able to rebut and defend themselves about what they are being accused of. As my co-counsel described, Mr. Hines did not have that here. Those contours are further established by Zimmerle as well as Ashker itself. We've talked a little bit about Ashker this morning, but just to detail, Ashker spoke to the specificity of evidence, excuse me, the specificity of information that is due in a notice. It did not speak to the sufficiency. Where there may be a case that there is some question of how much of the who, what, when, where, how may be at issue, in this case, none of it was provided to Mr. Hines. And a reasonable official in Mr. Speece's position would know that he could not defend himself on the notice that was provided in Form 1. That brings me to one other wrinkle in this case that I think is important to address to the court, which is that there are Nevada prison regulations here, Nevada prison forms, that were not followed. In this circuit, based on Supreme Court's decision in Hope, prison regulations are relevant to the establishment of clear law. And here, with respect to notice, Form 1 was improperly filled out. The report of violations section did not provide a basic understanding of the form. This Court might look at cases Meek and Melnick in this circuit, and that involved Nevada prisons, that show how this form should be properly used. We're not asking for some different form to be used by the prison. We're simply asking for it to use its forms and regulations as it's supposed to. Counsel, let me ask you this. What are we supposed to do with the penalogical reasons provided by the jail for not providing this information to Mr. Hines? Do we just say, you know, aren't we supposed to give them discretion? Yes, Your Honor, some deference. Deference, I'm sorry, yeah. Yes, Your Honor. Some deference is due, but not total abdication. And I want to draw a difference between providing evidence to Mr. Hines and providing information in the notice of charges itself. Wolf draws a hard line on the notice due charges. A few years later, in Matthews, the Court expands on this point about notice, that understanding at root what you're being accused of is the foundation of due process and the ability to rebut charges. The penological interest, I see I'm running out of time. May I finish? Is that all right? Thank you. Penological interests are relevant with respect to the evidence that was provided to Mr. Hines. But as we have submitted, some of the evidence could have been provided to him, as this Court reasoned in Melnick, to still allow Mr. Hines to present at events. Seeing that my time is up, just to very briefly conclude, Mr. Hines could not defend himself, and the decision against him was inadequately supported and unavailable to the District Court. That is why we ask that this Court reverse the order below. Thank you very much. Thank you. And I'd like to thank the law students who served as pro bono counsel today. Our Court is greatly aided by pro bono counsel doing this work. So thank you very much. The arguments were very helpful and well done. So this case is now submitted.
judges: GRABER, DESAI, ALBA